UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ICARD STORED VALUE SOLUTIONS, L.L.C., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:07-CV-1539 CAS |
| WEST SUBURBAN BANK, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This removed diversity matter is before the Court on defendant West Suburban Bank's ("WSB") motion to dismiss or, in the alternative, for more definite statement. Plaintiff iCARD Stored Value Solutions, L.L.C. ("iCARD") opposes the motion. For the following reasons, the motion to dismiss will be granted as to Counts I, II, III and IV and the alternative motion for more definite statement will be granted as to Count VI. Plaintiff will be granted leave to file an amended complaint.

**Background**.

iCARD filed a six-count petition against defendant WSB which alleges state law claims. Plaintiff alleges generally that it entered into a business relationship with WSB which went bad. Although it is difficult to ascertain the relevant facts from the petition, iCARD apparently issues stored value or pre-paid credit or debit cards, and deposited funds with WSB to pay the charges incurred when the cards were used. iCARD asserts claims for breach of contract (Count I), breach of fiduciary duties (Count II), tortious interference with contractual relationships (Count III), tortious interference with economic advantage (Count IV), unjust enrichment (Count V), and wrongful appropriation (Count VI).

**Legal Standards**.

    A. <u>Motion to Dismiss</u>.

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 1974 (abrogating the traditional 12(b)(6) "no set of facts" standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). A plaintiff need not provide specific facts in support of his allegations, <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level. <u>Twombly</u>, 127 S. Ct. at 1964-65 & n.3." <u>Schaaf v. Residential Funding Corp.</u>, __ F.3d __, No. 06-3694, 2008 WL 465481, *3 (8th Cir. Feb. 22, 2008). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 127 S. Ct. at 1965. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." <u>Id.</u> at 1969 (quoted case omitted).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. <u>Id.</u> at 1964-65; Fed. R. Civ. P. 8(a)(2).

    B. <u>Motion for More Definite Statement</u>.

A motion for more definite statement may be granted if a pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Federal Rule of Civil

Procedure 12(e). "Rule 12(e)'s standard is plainly designed to strike at unintelligibility rather than lack of detail." James W. Moore, et al., 2 Moore's Federal Practice, § 12.36 (3d ed. 2007).

**Discussion**.

    A. Breach of Contract.

WSB moves to dismiss Count I asserting that iCARD fails to set forth sufficient facts to allege the existence of a contract, the terms of the contract, how the terms were allegedly breached by WSB, and facts demonstrating actual damage as a result of the alleged breach.

WSB states that the extent of iCARD's allegations are that iCARD was to "advance funds and to provide certain confidential and proprietary information to WSB" and that WSB was "to perform certain services." (Pet. ¶ 8). WEB states that the "certain" information iCARD was to provide is not alleged and the "certain services" WSB was to perform are nowhere stated. With respect to WSB's alleged breach, iCARD states only that "WSB . . . refused to perform under the agreed terms," which are not stated in the petition, and "WSB . . . imposed new terms upon iCARD, and unilaterally enforced the new terms by virtue of WSB's superior position." (Pet. ¶¶ 10-11). WSB asserts that iCARD does not state what the "new terms" were, or how they contradicted the terms WSB should have followed. WSB also asserts that iCARD makes a conclusory assertion that it was "damaged," without stating how it was damaged.

Although Count I may include reference to all of the general elements of a breach of contract claim,[1] it fails to allege sufficient facts respecting those elements to establish the grounds on which the claim rests. iCARD's vague references to "certain services" and "certain information" are not sufficient factual allegations to meet the Twombly standard. While iCARD is not required to plead

---

[1]For purposes of the instant motion, the parties agree that whether Missouri or Illinois law applies, the elements of a claim for breach of contract are similar.

3

detailed facts to state a breach of contract claim, it must plead sufficient facts concerning the general nature of the contract and the alleged breach to give WSB fair notice of the basis for this claim. See Abdullah v. Minnesota, No. 06-4142, 2008 WL 283693 (8th Cir. Feb. 4, 2008) (unpublished per curiam) (to survive a Rule 12(b)(6) motions, a complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory). WSB's motion to dismiss Count I should therefore be granted.

  B. Breach of Fiduciary Duty.

WSB moves to dismiss Count II asserting that iCARD fails to set forth sufficient facts to allege the existence of a breach of fiduciary duty. WSB states that in the Petition, iCARD alleges that WSB acted as its "agent . . . in the processing of stored value cards, assisting iCARD with the setting up of the card programs, dealing with intermediaries on behalf of iCARD, holding and processing certain funds, and otherwise acting on behalf of iCARD with respect to iCARD's business" (Pet. ¶ 20) and, as a result of this relationship, WSB "undertook the obligations of a fiduciary" (id., ¶ 21).

WSB states that under Missouri law, three elements must be present to establish that an agency relationship exists between parties: (1) the agent holds the power to alter legal relations between the principal and third parties; (2) the agent is a fiduciary with respect to matters within the scope of the agency; and (3) the principal has the right to control the conduct of the agent with respect to matters entrusted to the agent, citing State ex rel. Ford Motor Co. v. Bacon, 63 S.W.3d 641, 642 (Mo. 2002) (en banc). WSB asserts that the Petition lacks factual allegations that would support any of these elements. WSB also asserts that the Petition alleges facts indicating that the iCARD/WSB relationship was that of a bank and its customer, and that such a relationship is a debtor-creditor relationship, not a fiduciary one.

4

To establish a claim for breach of fiduciary duty under Missouri law, a plaintiff must show (1) the existence of a fiduciary duty, (2) a breach of that duty, (3) causation, and (4) damage. See Preferred Physicians Mut. Mgmt. Group v. Preferred Physicians Mut. Risk Retention, 918 S.W.2d 805, 810 (Mo. Ct .App. 1996).

The first element of a claim for breach of fiduciary duty is the existence of a duty. It is well established under Missouri law that the mere existence of a contractual or business relationship does not create a fiduciary duty or relationship, or the presumption of such a relationship. Chmieleski v. City Products Corp., 660 S.W.2d 275, 294 (Mo. Ct. App. 1983) (citing Sewell v. Ladd, 158 S.W.2d 752, 757 (Mo. Ct. App. 1942)). A fiduciary relationship could exist, however, where circumstances show that the parties extended their relationship beyond the limits of the contractual obligations to a relationship founded upon trust and confidence. See id. at 293-94; see also Arnold v. Erkmann, 934 S.W.2d 621, 629 (Mo. Ct. App. 1996).

As set forth above, iCARD alleges that (1) WSB acted as iCARD's agent in carrying out certain specific actions (see Pet. ¶ 20); (2) WSB undertook fiduciary obligations; (3) WSB breached its fiduciary duties owed to iCARD by taking actions as specified in Count I, and (4) iCARD suffered damages as a result. In response to the motion to dismiss, iCARD asserts that under Missouri law, the relationship of an agent to his principal is fiduciary in nature. iCARD argues that because it alleges WSB was its agent and undertook the obligations of a fiduciary, it has sufficiently alleged the breach of a fiduciary duty.

The Court disagrees. iCARD's allegations that WSB was its agent and undertook fiduciary obligations are merely legal conclusions which are not supported by facts. The pleading of a conclusion is insufficient to survive a motion to dismiss. See Twombly, 127 S. Ct. at 1965. iCARD

5

has failed to adequately plead facts sufficient to support the first element of a claim for breach of fiduciary duty, i.e., that a fiduciary duty existed. Cf. Shapiro v. Butterfield, 921 S.W.2d 649, 651 (Mo. Ct. App. 1996) (conclusory allegations insufficient to support a claim of breach of fiduciary duty). WSB's motion to dismiss Count II should therefore be granted.

  C. Tortious Interference with Contractual Relationships and Business Expectancy.

WSB moves to dismiss Counts III and IV asserting that iCARD fails to allege sufficient facts to state claims for tortious interference with a business relationship or business expectancy, but rather merely asserts legal conclusions tracking the elements of the prima facie cases.

To state a claim for intentional interference with a business relationship or expectancy under Missouri law, a plaintiff must establish (1) a contract or valid business relationship or expectancy; (2) defendant's knowledge of the contract, relationship or expectancy; (3) intentional interference by the defendant inducing or causing a breach of the contract, relationship or expectancy; (4) absence of justification; and (5) damages resulting from defendant's conduct. Pony Computer, Inc. v. Equus Computer Sys. of Missouri, Inc., 162 F.3d 991, 998 (8th Cir. 1998) (citing Rice v. Hodapp, 919 S.W.2d 240, 245 (Mo. 1996) (en banc)); see also Community Title Co. v. Roosevelt Fed. Sav. and Loan Ass'n, 796 S.W.2d 369, 372 (Mo. 1990) (en banc).

   1. Contractual Relationship - Count III.

In Count III, iCARD alleges that it had unspecified contracts, "some of which . . . were terminated by the customers." (Pet. ¶ 26) (emphasis added). WSB asserts that in order to meet the Twombly pleading standard, iCARD must allege who the contracting parties were and whether the terminations were breaches of the contracts, as a breach, rather than a mere termination, is required for tortious interference, citing Schott v. Beussink, 950 S.W.2d 621, 628 (Mo. Ct. App. 1997). WSB

6

also states that iCARD does not allege the necessary element that WSB had knowledge of the contracts. Finally, WSB asserts that although iCARD makes the conclusory assertion that WSB's actions were "without justification or excuse," it does not plead any facts to support this conclusion.

iCARD responds in part, "The notice required to be provided to WSB is simply the factual allegation that it knowingly, intentionally and wrongfully interfered with iCARD's customers and prospective customers, causing damage to iCARD; this notice has been provided." Pl.'s Opp. at 7. iCARD states that it is not required to allege the names, addresses, places of business or other specific identification of its customers, citing Weicht v. Suburban Newspapers of Greater St. Louis, Inc., 32 S.W.3d 592, 598 (Mo. Ct. App. 2000). iCARD asserts that it "is a fair inference from the allegations set forth that iCARD is alleging WSB tortiously caused the termination of contracts and relationships of which it knew. Indeed, iCARD alleges that it was WSB's improper use of confidential information that constituted the tortious interference. Petition, ¶ 34." Pl.'s Opp. at 7-8. iCARD also states that its "petition, though not a model example of pleading this claim, gives WSB fair notice of what the claim is, and the ground upon which it rests." Id. at 8.

The Court does not believe the Twombly standard requires a plaintiff alleging tortious interference with contract to list the names of customers that allegedly breached their contracts. Such information would constitute specific facts, and a plaintiff need not provide specific facts in support of his allegations. See Erickson, 127 S. Ct. at 2200. The allegation that a customer breached a contract is a sufficient factual allegation at this stage, see Noble & Assocs, Inc. v. Edwards, 2007 WL 3094230, *3 (W.D. Mo. Oct. 19, 2007). The Court agrees with WSB, however, that in a tortious interference with contract case, a plaintiff must allege that the defendant induced a breach of contract. See Schott, 950 S.W.2d at 628. In this case, iCARD alleges only that certain customers terminated

7

their contracts with iCARD. Termination of a contract and breach of a contract are two different concepts.[2]

In addition, to plead a claim for a tortious interference with contract, a plaintiff must allege that the defendant had knowledge of the contract. See Rice, 919 S.W.2d at 245. iCARD asserts in its opposition memorandum that a "fair inference" can be drawn from its allegations that WSB knew of the contracts. The Court disagrees. To satisfy the pleading requirements of Rule 8(a) and Twombly, iCARD needed to allege sufficient facts to state a claim that is plausible on its face. iCARD has pled no facts concerning WSB's knowledge of the contracts.[3]

Finally, iCARD needed to allege sufficient facts to demonstrate that WSB's actions were without justification or excuse. Count III of iCARD's petition contains only the conclusory assertion that WSB's actions were without justification. Even prior to Twombly, Missouri courts have held that unsupported allegations a defendant's actions were "without justification or excuse" are conclusory in nature and are insufficient to support a claim for interference with contract. See Schott, 950 S.W.2d at 629. This is because a "defendant is justified in inducing a contract's breach, unless the defendant uses improper means to induce the breach." Id. at 628 (citation omitted). "The plaintiff must plead the improper means used to induce the breach of contract. The absence of justification is an essential element of the claim for interference with contract." Id. (citations

---

[2]Black's Law Dictionary defines "breach of contract" as "violation of a contractual obligation, either by failing to perform one's own promise or by interfering with another party's performance." Black's Law Dictionary 182 (7th ed. 1999). In contrast, "termination" is defined as "the act of ending something." Id. 1482. A termination does not necessarily imply the violation of a contractual obligation.

[3]In Count IV, iCARD alleges that "WSB knew iCARD had certain contracts" (Pet. ¶ 32), but this allegation is not incorporated into Count III and cannot serve to remedy the deficiency in Count III.

8

omitted). See also Staple Cotton Co-op. Assoc. v. D.G. and G., Inc., 2007 WL 735015, *2 (E.D. Mo. Mar. 8, 2007) (applying Schott's principles to a tortious interference with contract claim). iCARD's petition fails to allege facts to supports its conclusory assertion that WSB's actions were without justification.[4]

For these reasons, Count III fails to state a claim and WSB's motion to dismiss it should be granted.

### 2. Business Expectancy -- Count IV.

In Count IV, iCARD alleges that WSB intentionally interfered with its business relationship and expectancy with the Galleria Shopping Center and other potential customers by "improperly and tortiously using confidential information of iCARD" (Pet. ¶ 34), and that the Galleria Shopping Center and others declined to do business with iCARD as a result of WSB's actions. (Id. ¶¶ 37-38).

WSB moves to dismiss this count on the grounds that iCARD has failed to allege facts concerning (1) the names of the other entities or potential customers of iCARD with which WSB allegedly interfered, (2) a lack of justification by WSB, and (3) iCARD's reasonable expectation of commercial relations with the alleged potential customers.

With respect to WSB's first point, the Court has previously determined that iCARD does not need to plead the names of its potential customers. With respect to the second point, iCARD sufficiently alleges lack of justification in Count IV, because the petition alleges that WSB used

---

[4] iCARD contends that it adequately pleaded lack of justification, because it alleged in Count I that "WSB used iCARD's confidential and proprietary information to the detriment of iCARD." (Pet. ¶ 12). The Court disagrees. Although Count III incorporates the preceding allegations of the petition, there are no facts alleged in the petition which could link iCARD's conclusory assertion in Count III, that WSB lacked justification, to the statement in Count I that WSB used iCARD's confidential and proprietary information to its detriment. iCARD's contention requires an inferential leap that is not appropriate.

9

improper means--specifically, the improper and tortious use of iCARD's confidential information--to interfere with iCARD's business expectancies. Cf. Staple Cotton, 2007 WL 735015, *3 (complaint adequately alleged lack of justification where it alleged improper means to induce breach--that defendant added excess water to cotton during packing process--and by doing so intentionally interfered with plaintiff's contract).

With respect to the third point, WSB asserts that iCARD has failed to allege facts demonstrating that it had a "reasonable expectation" of commercial relations with the potential customers. The Court agrees. In business expectancy cases, Missouri courts require that "there must be reasonable expectations of economic advantage or commercial relations." Hartbarger v. Burdeau Real Estate Co., 741 S.W.2d 309, 310 (Mo. Ct. App. 1987); see Friedman v. Edward L. Bakewell, Inc., 654 S.W.2d 367, 369 (Mo. Ct. App. 1983); see also Bell v. May Dept. Stores Co., 6 S.W.3d 871, 876 (Mo. 1999) (en banc) (stating in the context of a claim for interference with a credit expectancy that there "must be . . . a reasonable expectation of obtaining credit. This expectancy cannot be too indefinite or remote.").

In Genovese v. DCA Food Industries, Inc., 911 F. Supp. 378 (E.D. Mo. 1996), the plaintiffs alleged that they discussed with the defendant the concept of selling fried chicken and donuts in China from specially designed food carts, that the defendant represented it would enter into a joint venture with plaintiffs to develop and market the concept and agreed upon a formula for the splitting of profits and sharing of costs, and that the defendant then conveyed the plaintiffs' idea to a third party which expropriated the concept and with the defendant entered into a joint venture with a Chinese company for development and marketing of the idea. Id. at 379.

In the tortious interference with business expectancy count, the plaintiffs asserted that all foreign companies must have Chinese government partners before doing business in China, that plaintiff Genovese had conducted business in China, had developed contacts with the Chinese government, and was the assistant vice-president of the United States-China Chamber of Commerce. The complaint alleged that the plaintiffs had a valid business expectancy with agents of the Chinese government to receive an exclusive territorial agreement to develop and market the food carts in China and that defendant interfered with that relationship or expectancy. Id.

This Court, the late Judge Gunn presiding, determined that the business expectancy alleged was too indefinite and remote to support a claim for tortious interference, in contrast to cases in which courts had found a reasonable business expectancy under Missouri law, citing Killian Construction Co. v. Jack D. Ball & Associates, 865 S.W.2d 889, 891 (Mo. Ct. App. 1993) (lowest responsible bidder for public project had reasonable business expectancy of receiving contract); Kennedy v. Kennedy, 819 S.W.2d 406, 408-9 (Mo. Ct. App. 1991) (allegation of negotiations which resulted in written letter of intent to trade properties satisfied pleading requirement for business expectancy); American Business Interiors, Inc. v. Haworth, Inc., 798 F.2d 1135, 1143 (8th Cir. 1986) (in bidding situation, extensive prior relations with customer created reasonable business expectancy in supplier). Genovese, 911 F. Supp. at 380. See also Weicht, 32 S.W.3d 592 (independent newspaper distributor plaintiffs with the exclusive right to distribute defendant's newspapers and to sell those distribution rights adequately pleaded a reasonable business expectancy where the plaintiffs alleged an ongoing market for their routes, of which the defendant was aware). In contrast to the foregoing cases, plaintiff's allegations in this case do not provide a factual basis to support a reasonable business expectancy.

iCARD's reliance on Carter v. St. John's Regional Medical Center, 88 S.W.3d 1 (Mo. Ct. App. 2002), is unavailing. In Carter, the Missouri Court of Appeals rejected the defendant's post-trial argument that the plaintiff failed to establish the existence of a contract or valid business relationship. Id. at 13. The court stated that a plaintiff does not need to plead or prove a business relationship to make a submissible case for tortious interference, and found that the plaintiff had submitted "ample evidence" that he had "reasonable expectations of future physician-patient relationships and prospective business relationships with other physicians and health care providers." Id. at 13-14. As a threshold matter, the Carter opinion is distinguishable because it addressed the post-trial sufficiency of the evidence, not the pleading standard on a motion to dismiss. Thus, the court's statement concerning pleading requirements is dicta. With respect to its discussion of the merits, the court's decision recognized that a plaintiff claiming a tortious interference with business expectancy must present evidence to establish the existence of reasonable business expectations.

In the instant case, iCARD does not plead any facts to support a reasonable expectation of a business expectancy with the St. Louis Galleria or any other prospective customer, but rather simply makes a "formulaic recitation of the elements" without providing facts to support an inference that its expectancies were reasonable. See Twombly, 127 S. Ct. at 1965. Count IV therefore fails to state a claim upon which relief can be granted and WSB's motion to dismiss should be granted.

D. Unjust Enrichment.

WSB moves to dismiss Count V asserting that iCARD fails to allege sufficient facts to state a claim for unjust enrichment. "An unjust enrichment has occurred where a benefit was conferred upon a person in circumstances in which retention of the benefit, without paying its reasonable value, would be unjust." S & J, Inc. v. McLoud & Co., L.L.C., 108 S.W.3d 765, 768 (Mo. Ct. App. 2003).

The elements of unjust enrichment are: "(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention of the benefit under such circumstances that it would be inequitable for defendant to retain the benefit without paying the value thereof." Graves v. Berkowitz, 15 S.W.3d 59, 61 (Mo. Ct. App. 2000) (citation omitted). "The last element, the injustice of retaining the benefit without paying for it, has been called the 'most significant' and also the 'most difficult' of the elements. Id. (quoted case omitted).

WSB asserts that iCARD fails to plead facts to adequately establish the third element, the injustice of retaining the benefit without paying for it. In its memorandum in support, however, WSB does not cite any cases which have addressed the pleading requirements for unjust enrichment claims under the Twombly standard.

The petition alleges that iCARD sold prepaid cards, and when it did so, it deposited funds with WSB to pay the charges incurred through the use of the cards.[5] (Pet. ¶ 42). Some pre-paid cards expire before the full amount of the card has been spent, which results in a remaining deposited balance referred to as "breakage." (Id. ¶ 43). iCARD alleges that WSB had in the past immediately remitted to iCARD the entire breakage of an expired card (id. ¶ 45), but unilaterally imposed new terms and conditions on its relationship with iCARD, including that WSB (1) retained thirty percent (30%) of the breakage, and (2) remitted the remaining seventy percent (70%) of the breakage to iCARD at the rate of $5 per card rather than returning it immediately. (Pet. ¶¶ 45-46). iCARD alleges that WSB imposed these new terms and conditions "through the use of duress and under

---

[5]Neither the petition nor the parties' briefs define the term "pre-paid cards," and it is used for the first time in Count V. The Court assumes the cards are pre-paid credit, debit or reward cards that can be used by consumers at retail establishments, but this assumption is not based on facts appearing in the record.

circumstances in which it would be inequitable for WSB to retain the benefit of the unspent funds." (Id. ¶ 48).

Thus, iCARD has alleged that WSB is retaining funds that iCARD deposited with it, to which WSB is not entitled, and which retention has occurred as a result of WSB's unilateral change of the terms and conditions of the parties' relationship. The Court finds this is a sufficient allegation of unjust enrichment to survive WSB's motion to dismiss. See Benfield Inc. v. Aon Re, Inc., 2008 WL 80610, *5 (D. Minn. Jan. 8, 2008) (denying motion to dismiss where plaintiff alleged that it had worked to negotiate reinsurance contracts and earned its commission upon placement of the contracts with a reinsurer, such that defendant's retention of the commissions resulted in unjust enrichment); Brown v. Kerkhoff, 504 F.Supp.2d 464, 544-45 (S.D. Iowa 2007) (complaint stated claim against defendant chiropractor where plaintiffs alleged that they remitted payment for and chiropractor received payment for unnecessary services); cf. Schaaf, 2008 WL 465481, *7-8 (unjust enrichment claim was properly dismissed where the plaintiffs failed to allege the defendant was not entitled to the proceeds it received, and in fact there was a contractual basis for the receipt).

WSB's motion to dismiss Count V and its alternative motion for more definite statement should therefore be denied.

E. Wrongful Appropriation.

WSB moves to dismiss Count VI, which is labeled as a wrongful appropriation claim. WSB's entire argument in support of its motion to dismiss is as follows:

> Finally, iCARD's "wrongful appropriation" allegations are explicitly conditioned on the premise that the "breakage" divisions were a breach of a contract between the parties; the terms of such contract iCARD does not plead. (Pet. ¶ 11 ("WSB unilaterally and without notice imposed new terms upon ICARD"), ¶ 54 (alleging the same "unilateral assertion of a right to" the "breakage")). Since iCARD fails to plead breach of contract, it cannot rely on that flawed theory as the basis for a claim that

14

WSB has "wrongfully appropriated" anything in contravention of such purported contract.

Mem. Supp. Mot. Dismiss at 13-14. WSB does not inform the Court what the necessary elements of this claim are, or otherwise support its argument with citation to legal authority. As a result, the Court will deny the motion to dismiss.

The Court will grant WSB's alternative motion for more definite statement with respect to Count VI, however, as the Court cannot determine whether this count attempts to assert a contract-based claim, a conversion claim, or some other sort of claim. The claim is so vague and ambiguous that WSB cannot reasonably be expected to frame a response to it.

**Conclusion**.

For the foregoing reasons, the Court finds that iCARD's petition fails to allege sufficient facts to state a claim in Counts I, II, III and IV. Defendant WSB's motion to dismiss should therefore be granted as to these counts, and denied as to Counts V and VI. Defendant WSB's alternative motion for more definite statement should be granted as to Count VI and denied in all other respects.

Although plaintiff did not file a formal motion for leave to file an amended complaint, in its opposition memorandum it shows a willingness to amend the complaint. Cf. Wisdom v. First Midwest Bank, of Poplar Bluff, 167 F.3d 402, 409 (8th Cir. 1999). Plaintiff will be granted leave to file an amended complaint which remedies the defects of its original petition.

Accordingly,

**IT IS HEREBY ORDERED** that defendant West Suburban Bank's motion to dismiss is **GRANTED in part** and **DENIED in part**; said motion is **GRANTED** as to Counts I, II, III and IV, and **DENIED** as to Counts V and VI. [Doc. 10]

**IT IS FURTHER ORDERED** that defendant West Suburban Bank's alternative motion for more definite statement is **GRANTED in part**, **DENIED in part**, and **DENIED in part as moot**; said motion is **GRANTED** as to Count VI; **DENIED** as to Count V; and **DENIED** as moot as to Counts I, II, III and IV. [Doc. 10]

**IT IS FURTHER ORDERED** that plaintiff is granted until **March 14, 2008** to file an amended complaint.

_[signature]_
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  3rd  day of March, 2008.